UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 5:26-cv-03530-SSS-MBK | Date | July 2, 2026 |
|---|---|---|---|
| Title | *Anyelimar Del Valle Gonzalez Gomez v. Warden, Adelanto ICE Processing Center et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER (1) GRANTING THE PETITION [DKT. NO. 1]; AND (2) DENYING AS MOOT PETITIONER'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 2]**

Before the Court is petitioner Anyelimar Del Valle Gonzalez Gomez's ("Petitioner") verified petition and ex parte application for a temporary restraining order. ["Petition," Dkt. No. 1; "Application," Dkt. No. 2]. The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in relation to the Petition and Application, the Court **GRANTS** the Petition and **DENIES** the Application **AS MOOT**.

## I.    BACKGROUND

On June 25, 2026, Petitioner filed a verified petition for writ of habeas corpus. [Petition]. Petitioner argues her detention violates the Immigration and Nationality Act and her Fifth Amendment right to procedural due process. [Id. at 8]. That same day, Petitioner filed the Application. [App.]. Petitioner also filed a declaration ["Gomez Declaration," Dkt. No. 2 at 7–11] and several exhibits related to her asylum proceeding [*see* Dkt. No. 2 at 12–24]. On June 29, 2026, Respondents filed an Answer to the Petition and a Response to the Application. ["Answer," Dkt. No. 7]. Respondents state they "are not presenting an opposition

argument at this time" and that "[s]hould the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will be necessary in this matter."  [*Id.* at 2].

## II.    FACTS

Petitioner is a citizen of Venezuela.  [Petition ¶ 1].  She entered the United States without inspection on or about September 16, 2023.  [*Id.* ¶¶ 3, 4].  The Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear on July 9, 2024, charging her solely under INA § 212(a)(6)(A)(i).  [Dkt. No. 2 at 23].  Since her release in September 2023, Petitioner filed an asylum application and is currently in removal proceedings.  [*Id.* ¶ 5].  Petitioner had a master hearing on June 26, 2026, and has an individual hearing scheduled for October 23, 2028.  [*Id.* ¶¶ 9–10].

Prior to her detention, Petitioner applied for employment authorization and secured housing at the Alvarado Family Shelter for Hope the Mission in Los Angeles, California.  [*Id.* ¶¶ 22–23].  On June 3, 2026, Petitioner was detained while leaving a federal courthouse in Los Angeles.  [*Id.* ¶¶ 9–10].  Petitioner remains at the Adelanto ICE Processing Center.  [*Id.* ¶ 13].

## III.    APPLICATION FOR TRO

Here, the Court finds Petitioner has made a sufficient showing to grant the requested relief.  *Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)*; [*See* App.].  However, because the Court grants relief on the Petition, as set forth below, the Court need not engage in the TRO analysis at this time.  Accordingly, the Application is **DENIED AS MOOT**.

## IV.    GRANTING PETITION

### A. Petitioner Has a Protected Liberty Interest

Petitioner demonstrates that her detention violates her due process and statutory rights because she had a protected liberty interest in remaining free following her September 2023 release.  [Petition at 4–6, 8].  Further, Respondents do not oppose Petitioner's release.  [*See* Answer at 2].  As provided in 8 C.F.R. § 241.13(i)(2), revocation is allowed of a noncitizen's release only if "there is a

significant likelihood that the [noncitizen][1] may be removed in the reasonably foreseeable future."  Moreover, ICE is required to provide Petitioner with notice of the reasons for the revocation of her order of supervision ("OSUP").  8 C.F.R. §§ 241.13(h)(4)(i)(2), (3).

"Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.* at 693.  Thus, a noncitizen under an OSUP has a constitutional liberty interest in their continued release from immigration detention.  *See Sun v. Santacruz*, No. EDCV-25-02198-JLS-JCx, 2025 WL 2730235, at *5–6 (C.D. Cal. Aug. 26, 2025) (finding the petitioner had a "substantial" liberty interest in "remaining out of immigration custody" pursuant to an OSUP and granting a TRO enjoining the respondents from re-detaining the petitioner without a pre-detention hearing before a neutral adjudicator).

8 U.S.C. § 1231(a) ("Section 1231(a)") governs the detention, release, and removal of noncitizens with an order of removal.  Under Section 1231(a), a

---

[1] This Order uses the term "noncitizenship" in place of "alienage" and "noncitizen" in place of "alien."  The Court follows the U.S. Supreme Court and Ninth Circuit, where the use of the term "noncitizen" has become a common practice.  *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018).  Additionally, this Court thinks it is prudent to "avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing."  Chicago Manual of Style Online 5.253, https://www.chicagomanualofstyle.org/book/ed17/part2/ch05/psec253.html.  As noted by the Ninth Circuit, "[t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed[.]'"  *Avilez*, 69 F.4th at 527 n.1 (citing *Alien*, *Webster's Third New International Dictionary* 53 (2002)).  Accordingly, because the word "noncitizen" is synonymous and does not encompass such negative connotations, the Court finds "noncitizen" is a better word choice.  *See Alien and Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011).

CIVIL MINUTES—GENERAL        Initials of Deputy Clerk mg/iv

noncitizen who has been ordered removed must be detained during the 90-day removal period.  8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A).  However, if a noncitizen is not removed within this period, they must be released "subject to supervision under regulations prescribed by the Attorney General."  *Id.* § 1231(a)(3).  While certain noncitizens may be detained beyond the 90-day removal period, if released, they must be subject to the same terms of supervision as under Section 1231(a)(3).  *Id.* § 1231(a)(6).

Section 241.4 and Section 241.13 set the terms of supervised release under Section 1231(a)(3) and 8 U.S.C. § 1231(a)(6) ("Section 1231(a)(6)"), including the conditions and procedures under which ICE may revoke release.  8 C.F.R. §§ 241.4(l), 241.13(i).  First, ICE may revoke a noncitizen's release if they violate a condition of their OSUP.  *Id.* §§ 241.4(l)(1), 241.13(i)(1).  Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  *Id.* § 241.13(i)(2).  Third, certain officials may exercise their discretion to revoke the release.  *Id.* § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention."  *Id.* § 241.4(d).  Additionally, the noncitizen must be "notified of the reasons for revocation" and be afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification."  *Id.* §§ 241.13(i)(3), 241.4(l)(1).  Thus, if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may detain them only under more limited circumstances than under 8 C.F.R. § 241.4(l) and must similarly provide them with an informal interview.  Failure to comply with these procedural requirements may constitute a due process violation.  *See Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) ("[T]hese regulations are intended to provide due process in that they are fairly construed to be part of a procedural framework designed to ensure the fair processing of an action affecting an individual." (citation modified)).

As stated, Respondents do not oppose Petitioner's release.  [*See* Answer at 2].  Accordingly, based on the Petition, the Court determines that Respondents have failed to provide the procedural protections afforded to Petitioner under 8 C.F.R. § 241.4.  Furthermore, Respondents have failed to provide Petitioner an informal interview to contest her re-detention as required by regulation.  Thus, the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following the September 2023 release.

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest.  Under *Mathews v. Eldridge*, the Court considers three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, Courts have regularly described a petitioner's interest in remaining out of custody as "substantial."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025).  The weight of the factor increases as a party remains on bond for an extended period.  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  Here, Petitioner was previously released in September 2023.  [Dkt. No. 2 at 7, 12–15, 18–19, 21].  Thus, Petitioner's interest is significant because ICE released her in September 2023. [*Id.*].

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no process afforded to Petitioner during her re-detention and no rationale provided for it.  [Petition ¶ 6].  This risk is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." *Zadvydas*, 533 U.S. at 690.  Accordingly, the Court finds that Petitioner faces a substantial risk of an erroneous deprivation of her liberty.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).  Although the Ninth Circuit's holding arose in a challenge to a different statute governing immigration detention, 8 U.S.C. § 1226(a), the Court finds the Ninth Circuit's reasoning equally availing here, as other courts have found. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025); *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025).  The government's previous decision to release Petitioner on an OSUP demonstrates that the government found that Petitioner was not a danger to the community and that her presence in future immigration proceedings could be "ensured by . . . alternative conditions." *Id*.

In sum, given Petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of her liberty interest, the high

value of additional procedural safeguards, and the lack of government interest in detaining Petitioner without additional process, all three of the *Mathews* factors strongly favor Petitioner. Therefore, the government's re-detention of Petitioner without adequate process violated Petitioner's right to procedural due process under the Fifth Amendment. Because Petitioner's re-detention was unlawful, the proper remedy is release from custody. *See Singh v. Bowen*, 2025 WL 3251437, at *9 (C.D. Cal. Nov. 21, 2025); *Yataco*, 2025 WL 4065463, at *7; *see also Faizyan v. Casey*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (collecting cases).

## B. Petitioner is Entitled to Reasonable Notice and an Opportunity to Meaningfully Respond Before Any Future Re-Detention

Typically, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted). In the context of both parole and probation revocations – the nearest analog to Petitioner's immigration supervision revocation – the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given Petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent a pre-deprivation notice and an opportunity to be heard, due process requires that such procedures comply with the applicable regulations. Courts in this circuit have determined that, in addition to release, individuals whose release orders were improperly revoked by respondents are entitled to an order enjoining and restraining respondents from re-detaining the non-citizen unless they follow the procedures set forth in § 241.13(i). *See Zimran v. Noem*, 2026 WL 161805, at *9 (C.D. Cal. Jan. 14, 2026) (collecting cases). Accordingly, the Court finds that such an order be entered with respect to Petitioner.

## C. Petitioner's Remaining Claim

Petitioner also argues that Respondents have violated her rights under the INA. [Petition at 8]. The "core of habeas corpus" is an attack on "the very duration of [a prisoner's] physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 487–88 (1973). Because the Court has already concluded that Petitioner is entitled to release on procedural due process grounds, it need not address Petitioner's remaining claim. Petitioner may raise this claim again if she is subject to any future detention.

//

## V.    CONCLUSION

For the aforementioned reasons, the Court **GRANTS** the Petition as to Claim TWO and **ORDERS** as follows:

- Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner (A# 245-227-623) from custody forthwith, and shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation hearing;
- Respondents are **ENJOINED** from re-detaining Petitioner unless they first follow the procedures set forth in 8 C.F.R. § 241.13(i), including providing Petitioner with adequate pre-deprivation notice and a meaningful opportunity to respond;
- Respondents are **ORDERED** to return to Petitioner any seized identity documents at the time of her release; and
- Respondents are **ORDERED** to file a status report no later than July 8, 2026, regarding their compliance with this Order.

A separate judgment will be issued.  **Lastly, given the sensitive nature of exhibits filed in support of Petitioner's Application, the Court SEALS Docket Entry No. 2.**

**IT IS SO ORDERED.**